**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY**

| | |
|---|---|
| Link Investment Co., ) | |
| ) | |
|    Plaintiff, ) | Case No.:  2:20-cv-03878-DCN |
| ) | |
| v. ) | IN ADMIRALTY |
| ) | |
| Jiangsu Steamship Pte. Ltd., ) | |
| Jiangsu Steamship Co. Ltd., ) | |
| Jiangsu Huaxi Ocean Shipping ) | |
|  Management Co. Ltd, and ) | |
| Spring Sunshine Shipping Ltd, ) | |
| ) | |
|    Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| Master of the M/V SPRING SUNSHINE, ) | |
| IMO 9628049, ) | |
| ) | |
|    Garnishee. ) | |

**VERIFIED COMPLAINT AND REQUEST
FOR ISSUANCE OF PROCESS OF MARITIME
<u>ATTACHMENT AND GARNISHMENT</u>**

Plaintiff Link Investment Co. ("Link") pursuant to Supplemental Admiralty and Maritime Rule B files this Verified Complaint against Defendants Jiangsu Steamship Pte Ltd ("Jiangsu Singapore"), Jiangsu Steamship Co. Ltd. ("Jiangsu Hong Kong"), Jiangsu Huaxi Ocean Shipping Management Co. Ltd. ("Jiangsu Management"), Spring Sunshine Shipping Ltd. ("Spring Sunshine") and Garnishee Master of the M/V SPRING SUNSHINE, IMO 9628049, requesting issue of a writ of maritime garnishment and attachment to be issued for property of Jiangsu Singapore in or to be in this District, including but not limited to the Vessel, and alleges as follows:

- 1 -

## JURISDICTION AND VENUE

1.      This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333, and is brought to obtain security for ongoing maritime arbitration in London, pursuant to 9 U.S.C. §8.

2.      Venue is proper in this jurisdiction as the property of Jiangsu Singapore is located within this District.

3.      Defendants are not present in this District for the purposes of Supplemental Rule B.

## PARTIES

4.      Link is a foreign business entity organized and existing under the laws of Liberia. At all material times, Link was the registered owner of the M/V ALPHA ERA, IMO 9220992.

5.      Jiangsu Singapore is a foreign business entity organized and existing under the laws of Singapore, with a registered address at 8 Eu Tong Sen Street #15-96, the Central 059818 Singapore. At all material times, Jiangsu Singapore was the time charterer of the Vessel M/V ALPHA ERA under a Time Charter dated April 16, 2020, on the NYPE 1946 form, between Link and Jiangsu Singapore.

6.      Jiangsu Hong Kong is a foreign business entity organized and existing under the laws of Hong Kong, with a registered address at Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong.

7.      Jiangsu Management is a foreign business entity organized and existing under the laws of China, with a registered address at 88, Zhonghua Road in Zhangjiagang Free Trade Zone, Zhangjiagang, Jiangsu, China. At all material times, Jiangsu Management was listed as the commercial and ship manager of the M/V SPRING SUNSHINE (IMO 9628049).

8. Spring Sunshine is a foreign business entity organized and existing under the laws of Hong Kong, with the same registered address as Jiangsu Hong Kong – Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong. At all material times, Spring Sunshine was the registered owner of the M/V SPRING SUNSHINE.

9. On information and belief, at all material times and for reasons set forth below, Spring Sunshine held the title to the M/V SPRING SUNSHINE as a mere agent for Jiangsu Singapore, the latter being the true or ultimate beneficial owner of the M/V SPRING SUNSHINE.

10. Further and alternatively, on information and belief, at all material times and for reasons further set forth below, Jiangsu Singapore, Jiangsu Hong Kong, Jiangsu Management and Spring Sunshine have constituted alter egos of one another such that they should be treated as a single entity for the purpose of the requested attachment sought herein.

**FACTS**

11. On April 16, 2020, Link and Jiangsu Singapore entered into a Time Charter (the "Charter"), pursuant to which, Link agreed to let, and Jiangsu Singapore agreed to hire, the M/V ALPHA ERA for a one time charter trip, via East Coast Australia to Singapore – Japan range via safe ports, with a cargo of coal in bulk.

The Charter provided *inter alia* as follows:

> *"Duration about 45-55 days without guarantee"*
>
> *"Vessel… to be employed, in carrying lawful merchandise…"*
>
> *"4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD 6,000 per day or pro rata including overtime for first 50 days. Thereafter (51 days) hire to be adjusted to USD 7,000 per day or pro rata including overtime…."*

> *"12. That the Captain shall use diligence in caring for the ventilation of the cargo."*
>
> *"17. That should any dispute arise between Owners and the Charterers, the matter in dispute however, shall be referred to arbitration in London..."*
>
> *"18. That the Owners shall have a lien upon all cargoes, and all sub-freights and/or sub-hires for any amounts due under this Charter, including General Average contributions, ...."*
>
> *"Clause 34 – Permitted Cargo*
>
> *With harmless coal in bulk which to be of a type having a history of shipment under similar circumstances without problems arising from methane emissions or spontaneous heating."*
>
> *"Clause 35 – Trading*
>
> *1. Trading shall always be via safe port(s)...*
> *...*
>
> *However, if there is any breach of Charter and Charterers' obligations to provide a safe cargo, then the Charterers shall be responsible for all consequences and any loss of time and/or expenses resulting therefrom, including the cost of the Protection and Indemnity surveyor, will be for Charterers' sole account."*
>
> *"Final Form Standard SBCL Charter Party Clause*
>
> *Solid bulk cargoes are to be presented for carriage, loaded and, where necessary, trimmed only if lawful and harmless..."*
>
> *"International Maritime Sold Bulk Cargo Code*
>
> *Solid bulk cargoes are to be presented for carriage, loaded, and, where necessary, trimmed only if lawful and harmless..."*

12. The M/V ALPHA ERA was delivered to Jiangsu Singapore on DLOSP Changjiangkou, China, on April 17, 2020.

13. The M/V ALPHA ERA proceeded to Newcastle Port, Australia, and loaded a cargo of 135,019 tonnes of Australian Thermal Coal on May 9, 2020. A B/L was issued in respect of the cargo on the Congenbill form.

14. The M/V ALPHA ERA proceeded to Fangcheng, China for discharge, arriving at Fangcheng on May 29, 2020.

15. Upon arrival, the M/V ALPHA ERA was not allowed to discharge its cargo due to difficulty in obtaining a clearance from Customs. The M/V ALPHA ERA remained at anchorage until June 29, 2020, when the Master of the Vessel inquired of the local agent as to the reason for the delay, considering that vessels that arrived after May 29, and carrying the same type of cargo, were allowed to discharge.

16. The local agent advised the Master of the M/V ALPHA ERA that amount of cargo was insufficient to meet the requirements for obtaining clearance. The cargo could not be discharged because of the absence of an import quota / license / allocation, or other necessary permission that is required to discharge the cargo in China, and negotiations were underway with regard to obtaining the necessary Customs clearance and permissions to move to berth and discharge the cargo.

17. Those negotiations dragged on and the M/V ALPHA ERA has still not been called in to berth. That is a period of more than 5 months with no present berthing prospects.

18. While the M/V ALPHA ERA was at anchorage, the cargo of coal aboard began emitting methane gas. The methane levels were monitored by the crew, as they created the risk of explosion. By September 17, 2020 on at least ten occasions, the cargo holds required ventilation to reduce the methane levels. However, in ventilating the holds, oxygen is introduced and the gradual increase in oxygen content carries with it the risk of allowing the cargo to self-

heat. Self-heating of the cargo creates a risk of combustion, which would require immediate action to remove the cargo from the M/V ALPHA ERA.

19. Jiangsu Singapore is in breach of Charter in loading an unlawful and dangerous cargo on the M/V ALPHA ERA in breach of Clause 35, the SBCL clause, and the International Maritime Sold Bulk Cargo Code clause, in that it could not legally be discharged by the M/V ALPHA ERA in China.

20. The shipment violated a law at the place of discharge, namely a prohibition of importing cargo without an import quota / licence / allocation, or other necessary permission, which has caused severe delay to the M/V ALPHA ERA, and very significant and continuing losses to Link.

21. Link's claim is for damages in respect of the severe delay to the M/V ALPHA ERA at the discharge port, Fangcheng, as a result of the absence of the necessary import license / quota for the cargo.

22. As provided in the Charter Party, Link has initiated London maritime arbitration against Jiangsu Singapore. In the London maritime arbitration, Link demands an award including the following:

    a. Damages at the contract versus market rate in the sum of $1,792,980 up to 15 October 2020 and increasing at a daily rate of $14,230 after that date, or such other sum as the tribunal may determine;

    b. Damages in the sum of $23,400 in respect of costs incurred to date as a result of the delay, or such other sum as the tribunal may determine;

    c. A declaration that Charterers are liable to pay for future costs caused by the delay;

   d. An indemnity in like amounts;

   e. Compound interest;

   f. Costs.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Link demands security for these amounts, including through garnishment of property of Jiangsu Singapore pursuant to Supplemental Rule B, as set out below.

## Alter Ego Claims:

### Jiangsu Singapore is the True Owner of the M/V SPRING SUNSHINE, IMO 9628049l

23. On information and belief, Jiangsu Singapore is the true Owner of the M/V SPRING SUNSHINE, IMO 9628049l , and Spring Sunshine merely holds the registered ownership to the M/V SPRING SUNSHINE as Jiangsu Singapore's agent.

24. The commonality of the directorships of Yixin Gao and Sujun Lyu (and, in the case of Yixin Gao, the commonality of ownership) of both Spring Sunshine and Jiangsu Singapore makes it clear that the representations made on behalf of Jiangsu Singapore in the Introduction were equally made by Spring Sunshine, or alternatively were made with the express or implied consent of Spring Sunshine.

25. Defendants Jiangsu Singapore, Jiangsu Hong Kong, Jiangsu Management and Spring Sunshine have so blurred the lines between purportedly separate existences that they should be treated as alter ego entities.

26. On information and belief, Jiangsu Hong Kong is a Hong Kong entity operating a fleet of 10-15 vessels and effectively controlling Defendants Jiangsu Singapore, Jiangsu Management, and Spring Sunshine. Jiangsu Management is the ship management department of Jiangsu Hong Kong. Jiangsu Singapore is the chartering department of Jiangsu Hong Kong.

Spring Sunshine is a one-ship owning shell company intended only to hold registered title to the M/V SPRING SUNSHINE.

27. On information and belief, the Defendants share overlapping ownership and officers. The grounds for such information and belief include the following:

    a. According to the Hong Kong, Chinese and Singapore company registries, all shares in Jiangsu Singapore are owned equally by two Chinese nationals, Yixin Gao and Sujun Lyu. The same two individuals also act as directors of Jiangsu Singapore.

    b. Yixin Gao and Sujun Lyu likewise act as directors of Jiangsu Hong Kong. All shares in Jiangsu Hong Kong are owned by Baoli International (Hong Kong) Trading Co. Ltd, another Hong Kong entity. However, Baoli International's sole director is the same Sujun Lyu.

    c. Likewise, Yixin Gao and Sujun Lyu act as directors of Jiangsu Management. In addition, Yixin Gao owns 30% of shares in that company.

    d. Similarly, Yixin Gao and Sujun Lyu act as directors of Spring Sunshine. Again, Yixin Gao owns 30% of shares in it, the rest being held by Baoli Marine Co. Ltd, a British Virgin Islands entity. Although the identities of directors and shareholders of BVI corporations are not publicly available, Plaintiff reasonably anticipates that the same Yixin Gao and Sujun Lyu own shares in it and/or act as its directors.

    e. Jiangsu Hong Kong, Spring Sunshine and Baoli International share the same company secretary - Synergies Professional Services Ltd.

28. On information and belief, the Defendants, at least Jiangsu Hong Kong, Jiangsu Singapore and Spring Sunshine, share (and/or shared at all material times) common office space and addresses. According to the Hong Kong company registry Jiangsu Hong Kong and Spring

Sunshine are currently registered at the same Hong Kong address at Unit 1001, 10/F., Edward Wong Tower, 910 Cheung Sha Wan Road, Lai Chi Kok, Kln, Hong Kong.

        a.    The use of shared addresses is particularly evident from the fact that Jiangsu Hong Kong's website (www.jsssc.com/en) and Equasis2 list another address in mainland China (88 Zhonghua Road, Dongdaemun, Zhangjiagang Free Trade Zone, Jiangsu Province) for Jiangsu Hong Kong, Jiangsu Singapore and Jiangsu Management. All of these Defendants' email addresses belong to the same @jsssc.com domain. All phone numbers listed on the website are Chinese (+86- 512 or 0512).

        b.    M/V SPRING SUNSHINE's previous registered owner, Hua Yang International Marine Transportation Co. Ltd, had the exact same business address at 88 Zhonghua Road as Jiangsu Hong Kong, Jiangsu Singapore and Jiangsu Management.

29.    On information and belief, the defendants, or at least Jiangsu Singapore and Jiangsu Hong Kong, share overlapping personnel. According to information in open and publicly available social media accounts on Facebook and LinkedIn, several individuals identifying themselves as employees of either Jiangsu Singapore or Jiangsu Hong Kong simultaneously list the other company as their employer. For example:

        a.    Captain Zhao Baoan, who is a director of Jiangsu Singapore, lists on his Facebook page that he is a "Shipping Manager" at "Jiangsu Steamship Co. Ltd" (i.e. Jiangsu Hong Kong);

        b.    An employee named Chen Chen appears to be an employee of one or both of Jiangsu Singapore and Jiangsu Hong Kong. Chen Chen's LinkedIn profile states that he/she works at a "Handy chartering desk at JIANGSU STEAMSHIP COMPANY LIMITED" (i.e.

Jiangsu Hong Kong).  However, he/she lists his/her current employer as "Jiangsu Steamship Pte Ltd" (*i.e.* Jiangsu Singapore);

      c.     Ms Crystal Xu appears to be an employee for Jiangsu Singapore and is listed as such on her LinkedIn profile. However, her biography on her profile states that she "moved to Singapore to join JSSSC as senior chartering manager specially for own fleet chartering…" . The tenor of this message is clear. Ms Xu, who works for Jiangsu Singapore, understands her role as performing chartering operations for her "own" company fleet, being the fleet owned by the Defendants.

30.     On information and belief, neither Jiangsu Singapore, nor Jiangsu Management, nor Spring Sunshine exercise, or exercised, any independent discretion. Spring Sunshine is a one-ship company with no known independent business operations, personnel or website of its own and is entirely controlled by the Jiangsu group. Its name matches its only asset, the M/V SPRING SUNSHINE – an obvious sign of a single-vessel shell company. Similar corporate arrangements exist for other vessels in the fleet of Jiangsu Hong Kong (e.g. Spring Glory Shipping Ltd being named the registered owner of the M/V SPRING GLORY). Jiangsu Singapore and Jiangsu Management are expressly called "departments" or "branch offices" of Jiangsu Hong Kong in various different contexts, as follows:

      a.     This wording is used to refer to the various corporate entities on the website of Jiangsu Hong Kong);

      b.     This same nomenclature is used by one of directors of Jiangsu Singapore, Capt. Zhao Baoan, who referred multiple times on Facebook to Jiangsu Singapore (of which he is a director) as a "department" of Jiangsu Hong Kong;

      c.      Further, in Capt. Zhao Baoan's Facebook posts, he expressly refers to the opening of "branch office" in Singapore. Capt. Zhao Baoan goes as far as to say that his title is the "General Manager of Singapore Branch" and specifically invites candidates to apply for a job on the basis that the Singapore entity is a "branch office". That is clearly not the same as a corporate entity holding itself out as an independent entity to other companies within the Jiangsu group. When a business is identified as being a "branch" or a "department" of another business, the commercial – as well as legal – meaning is that the "branch"/"department" is a part of the other entity, rather than truly distinct.

      d.      In a news article dated 8 April 2016, the same Captain Zhao Baoan is specifically quoted as stating that Jiangsu Hong Kong is moving a chartering "team" to Singapore and promoting Jiangsu Singapore by touting Jiangsu Hong Kong's "key strengths as a shipping company," i.e. a single business enterprise

31.     An almost identical list of vessels is also present on Jiangsu Hong Kong's website as belonging to Jiangsu Hong Kong and/or managed by Jiangsu Management. However, according to Equasis and information available from Protection and Indemnity sources, each of these "Spring" ships is owned by a one-ship company.

32.     In relation to the majority of them (including M/V SPRING SUNSHINE) Jiangsu Management acts as the commercial and ship manager, while neither Jiangsu Singapore nor Jiangsu Hong Kong are in fact listed as holding title or any kind of interest in these vessels. This strongly suggests that Jiangsu Singapore uses property owned by, *inter alia*, Spring Sunshine and operated by Jiangsu Management, as its own.

33. In addition, Jiangsu Singapore regularly uses Jiangsu Hong Kong's logotype (the silhouette of a bull standing on the globe) in its commercial documents, such as letters of introduction and hire statements of account sent to third parties.

34. Third-party commercial partners do not treat Jiangsu Hong Kong and Jiangsu Singapore as separate entities. For example, shipbroking firm Jarsin Shipbrokers' website lists Jiangsu Hong Kong as one of Jarsin's partners, but indicates Singapore as Jiangsu Hong Kong's location.  Therefore, Defendants represent to the market that they operate as a single shipping entity consisting of a fleet of vessels, and not as individual business entities.

35. On information and belief, there has also been overlap relating to financing arrangements pertaining to the vessels in Jiangsu Hong Kong's fleet. For example, as follows from a deed of cross-collateralization dated October 20, 2011, Spring Sunshine mortgaged its only vessel to China Development Bank Corporation. The same was done by several other one-ship companies controlled by Jiangsu Hong Kong in relation to their vessels. On each of those mortgages (including the Spring Sunshine mortgage), a director of Jiangsu Hong Kong and a director/shareholder of Jiangsu Singapore, Yixin Gao, acted as a "chargor" to secure the mortgagees' obligations.

36. In light of the foregoing, and on information and belief, the Defendants completely fail to observe corporate formalities and keep their operations separate.  It therefore is clear from the documents available that the Defendants act as alter egos of each other and as a single business enterprise.

## COUNT I
## BREACH OF MARITIME CONTRACT

37. Link repeats the foregoing paragraphs as if fully set forth herein.

38.     Jiangsu Singapore, and Defendants as its alter-egos, has breached its maritime contract with Link as set out more fully above.

39.     Despite repeated demand, Link remains unpaid for amounts due as a result of Jiangsu Singapore's breach of a maritime contract, and further is unsecured for its arbitration in London of its demands against Jiangsu Singapore.

40.     Link demands security for its London maritime arbitration, and then on issue of the arbitral judgment, payment from the security the amount of the arbitral judgment together with all interest, costs and attorneys fees, as set forth more fully below.

## COUNT II
## MARITIME ATTACHMENT AND GARNISHMENT (RULE B)

41.     Link repeats the foregoing paragraphs as if fully set forth herein.

42.     Link has a *prima facie* valid admiralty claim.

43.     Defendants cannot be located within the District within the meaning of Supplemental Rule B.

44.     Jiangsu Singapore, and Defendants as its alter-egos own tangible or intangible personal property located or soon to be located within this District, namely the M/V SPRING SUNSHINE.

45.     Link seeks issue of process of maritime attachment so that it may obtain security for its claims against Jiangsu Singapore, and Defendants as its alter-egos and ultimately payment of those claims from the security.

46.     No security for Link's claims has been posted by Jiangsu Singapore, and Defendants as its alter-egos or anyone acting on their behalf to date.

## PRAYER FOR RELIEF

WHEREFORE, Link prays:

A. That, in response to **Count I**, this Court order the provision of security for the London maritime arbitration against against Jiangsu Singapore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., in the amount of at least $8,689,550.59, detailed as follows:

| | | |
|---|---|---|
| Damages at the contract versus market rate up to 15 October 2020 | $ 1,792,980.00 | |
| Damages from 16 October, 2020 to and including 31 December, 2021 | $ 6,289,660.00 | (442 days) |
| Damages in respect of costs incurred to 15 October, 2020 as a result of delay | $ 23,400.00 | |
| Damages in respect of costs uncurred from 16 October, 2020 to and including 31 December, 2021 as the result of delay (est.) | $ 442,000.00 | (442 days) |
| Costs (including attorneys and arbitrators' fees) of the London Maritime Arbitration, and this case (est.) | $ 100,000.00 | |
| Interest on the amounts above, 2 years at current 3 month LIBOR rate | $ 41,510.59 | 0.24% |

**Total Security Demanded:** **$ 8,689,550.59**

B. That on provision of security, this Court stay this action pending the results of the London maritime arbitration, and then on issue of the arbitral judgment, payment from the security the amount of the arbitral judgment together with all interest, costs and attorneys fees, in the amount of the arbitral judgment.

C. That, in response to **Count II**, since Jiangsu Singapore, and Defendants as its alter-egos cannot be found within this District pursuant to Rule B, this Court issue an Order

directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Jiangsu Singapore, and Defendants as its alter-egos' tangible or intangible property or any other funds held by any garnishee, including but not limited to the M/V SPRING SUNSHINE, IMO 9628049l, up to the amount of at least $8,689,550.59 as detailed above, to secure Link's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

      D.     That this Court award Link such other and further relief that this Court deems just and proper.

Dated: November 5, 2020.

    RESPECTFULLY SUBMITTED:

    Cooper & Bilbrey, P.C.

    COOPER & BILBREY, P.C.
    By: /s/Albert Glen Bilbrey, Jr.
    ALBERT GLEN BILBREY, JR., ESQUIRE
    Federal Court ID 12938
    South Carolina Bar 103799
    agbilbrey@jhcooper.com

    JOHN HUGHES COOPER, ESQUIRE
    Federal Court ID 298
    South Carolina Bar 1387
    State Bar of Georgia 185986
    shiplaw@jhcooper.com

    JOHN TOWNSEND COOPER, ESQUIRE
    Federal Court ID 10172
    South Carolina Bar 76087
    jtc@jhcooper.com

    1476 Ben Sawyer Blvd., Suite 11
    Mt. Pleasant, SC 29464
    843-883-9099; fax 843-883-9335

    ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
443-290-8704; fax 410-510-1789
jssimms@simmsshowers.com

## **VERIFICATION**

I am a principal of Simms Showers LLP, counsel to plaintiff Link Investment Co. No officer of Link Investment Co. is present in this District to make this declaration, which Link Investment Co. has authorized me to make on their behalf based on facts including documents and facts from our investigation and received from Link Investment Co. The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the documents and from our investigation and from the records of Link Investment Co.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District and also for any corporate registration of defendants in the State of South Carolina, or otherwise of any agent authorized to accept service of process in this District. There is no record of any general or resident agent authorized to accept service of process for Defendants in this District.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.

Executed November 5, 2020.

 /s/ J. Stephen Simms
J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
443-290-8704; fax 410-510-1789
jssimms@simmsshowers.com